IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATHAN BENJAMIN, | : CIVIL ACTION |
| Plaintiff | : |
| | : No. 2014-cv-07098 |
| v. | : |
| TRANS UNION, LLC, et al. | : |
| Defendants | : |

**RENEWED MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2)
OF DEFENDANTS, NORTHWEST FEDERAL CREDIT UNION
AND CHARTWAY FEDERAL CREDIT UNION**

AND NOW, defendants, Northwest Federal Credit Union (incorrectly identified as Northwest Federal Credit Union Foundation) (herein: "Northwest") and Chartway Federal Credit Union (herein: "Chartway"), by and through their counsel, Litchfield Cavo LLP, hereby file the instant Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2), and in support thereof aver as follows:

**I.   BRIEF STATEMENT OF BASIS FOR DISMISSAL OF PLAINTIFF'S COMPLAINT**

1.   Plaintiff, Nathan Benjamin, filed the instant Civil Action Complaint (herein: "Complaint") with this Court under Docket No. 2:14-cv-07098 against all three of the major credit reporting bureaus, against various debt collection agencies and against a number of lenders, including Northwest and Chartway, under the Fair Credit Reporting Act ("FRCA"). See Plaintiff's Complaint, a copy of which is attached hereto as Exhibit 1.

2.   The crux of plaintiff's cause of action (at least with respect to the lending defendants) appears to be that a number of accounts were opened in plaintiff's name with the defendant-lenders, and that delinquencies associated with said accounts should not have been reported to the credit reporting bureau defendants.  See

Exhibit 1 at ¶¶15; 24 (generally alleging that all defendants reported "derogatory and inaccurate statements and information" "consisting of accounts/tradelines" which plaintiff believes "to be the result of fraud").

3. Plaintiff is a resident of the state of Texas. See Exhibit 1 at ¶4.

4. Northwest and Chartway are both federal credit unions with principle places of business in Virginia. See Exhibit 1 at ¶¶ 11-12.

5. The Complaint does not allege that any of the conduct at issue occurred in Pennsylvania. See Exhibit 1.

6. As set forth in greater detail below, plaintiff's Complaint must be dismissed as to Northwest and Chartway, as this Court lacks personal jurisdiction over either entity.

## II. BACKGROUND AND PROCEDURAL POSTURE

7. As noted above, plaintiff, Nathan Benjamin, is an adult individual who, upon information and belief, resides in the state of Texas. See Exhibit 1 at ¶ 4.

8. As plaintiff's Complaint acknowledges, Northwest is a federal credit union with a principal place of business in Herndon, Virginia. See Exhibit 1 at ¶ 11.

9. Plaintiff's Complaint further acknowledges that Chartway is a federal credit union with a principal place of business in Virginia Beach, Virginia. See Exhibit 1 at ¶ 12.

10. On April 10, 2015, Chartway and Northwest filed a Motion to Dismiss for lack of personal jurisdiction. See Motion to Dismiss, a copy of which is attached hereto as Exhibit 2.

11. Therein, Chartway and Northwest asserted that they were not subject to specific jurisdiction, as the cause of action does not arise out of either defendant's forum-related activities. See Exhibit 2 at ¶19.

12. Chartway and Northwest further asserted that they were not subject to general jurisdiction, as they lack the requisite continuous, systematic and substantial contacts with the Commonwealth of Pennsylvania. See Exhibit 2 at ¶20.

13. On April 27, 2015, plaintiff filed a Response in Opposition thereto. See Response in Opposition, a copy of which is attached hereto as Exhibit 3.

14. Therein, plaintiff did not contest that neither Chartway nor Northwest were subject to specific jurisdiction. See Exhibit 3.

15. Rather, plaintiff argued that both entities may be subject to general personal jurisdiction due to their continuous, systematic and substantial contacts with Pennsylvania. See Exhibit 3 at p. 2 ("Plaintiff, however, disagrees that personal jurisdiction does not exist here primarily because Plaintiff has a reasonable basis to believe that both Moving Defendants have a significant and substantial customer and member base in Pennsylvania and solicit products and services in Pennsylvania that are of a continuous and systemic nature so as to confer personal jurisdiction over both Defendants in Pennsylvania").

16. Specifically, plaintiff asserted that Northwest is licensed to sell insurance products in Pennsylvania:

> For example, Northwest's website confirms that that it is licensed to sell automobile and home insurance products in Pennsylvania.[1] This fact would indicate that Northwest has a substantial customer base in Pennsylvania and is subjecting itself to the laws of and regulations of Pennsylvania relating to its insurance products. *See* Northwest Website, at https://www.nwfcu.org/business-insurance.

See Exhibit 3 at p. 3

17. It was further asserted that plaintiff had reason to believe Northwest had a "substantial customer base in Pennsylvania" due to the fact that Northwest members could withdraw funds from their accounts from the STAR and Cirrus networks:

> Northwest has a cooperative[2] of ATM locations that its customers can access which are located throughout the Eastern District of Pennsylvania again

---

[1] Notably, the website referenced by plaintiff provides that "Insurance products and services are offered through NW Insurance Agency, a subsidiary of NW Capital Management (a wholly owned subsidiary of Northwest Federal Credit Union)." Accordingly, the foregoing website directly disproves the very argument asserted by plaintiff.

[2] It is unclear what basis plaintiff had for this assertion, as nowhere on Northwest's website does it indicate that Northwest owns or maintains any such cooperative of ATMs. On the contrary, Northwest's website clearly states that it participates in a number of national ATM networks. See https://www.nwfcu.org/atms/

- 3 -

reflecting that Northwest has a substantial customer base in Pennsylvania. See Northwest Website, at https://www.nwfcu.org/locator.

18. Similarly, plaintiff asserted that Northwest had a "substantial customer base in Pennsylvania" due to the fact that a number of the member companies identified on Northwest's website[3] had "significant business operations in Pennsylvania." See Exhibit 3 at pp. 3-4.

19. Like the assertions made against Northwest, plaintiff asserted that Chartway also "has a cooperative of ATM locations" "throughout the Eastern District of Pennsylvania," which plaintiff believed was suggestive that Chartway had a substantial member base in Pennsylvania. See Memorandum at p. 5.

20. Similarly, plaintiff claimed that Chartway had numerous member companies with "significant business operations in Pennsylvania," again suggesting a substantial member base in Pennsylvania. See Exhibit 3 at pp. 5-6.

21. On May 26, 2015, the Court denied defendants' Motion to Dismiss without prejudice, affording plaintiff until June 30, 2015 to conduct jurisdictional discovery "limited to the issue of whether Northwest and Chartway have minimum contacts in Pennsylvania." See May 26, 2015 Order, a copy of which is attached hereto as Exhibit 4.

22. Upon the conclusion of jurisdictional discovery, defendants were granted leave to renew their Motion to Dismiss on or before July 14, 2015. See Exhibit 4.

23. As set forth in greater detail below, plaintiff has failed to adduce sufficient evidence of minimum contacts as to either Northwest or Chartway. Accordingly, neither Northwest nor Chartway are subject to personal jurisdiction in this matter.

IV. **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

24. "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Steinfield v. EmPG Int'l, LLC*, 2015 WL 1256169, at *4 (E.D. Pa. 2015) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).

---

[3] https://www.nwfcu.org/member-companies.

25. "[A] court has general jurisdiction over a nonresident corporation only if the corporation's contacts with the forum are continuous, systematic, and substantial." *Ferro v. Atl. City Showboat, Inc.*, 2007 WL 4275506, at *3 (E.D. Pa. 2007); *Hurley v. Cancun Playa Oasis Int'l Hotels*, 1999 WL 718556, at *2 (E.D. Pa. 1999) (citing *Provident National Bank*, 819 F.2d at 437; 42 Pa. Cons.Stat. Ann. § 5301(a)(2)(iii)).

26. "The standard for general jurisdiction 'is not an easy one to meet.'" *Id.* (citing *Surgical Laser Technologies v. C.R. Bard, Inc.*, 921 F.Supp. 281, 284 (E.D. Pa. 1996)). "In fact, only a showing of 'significantly more than mere minimum contacts' will suffice." *Id.* (citing *See Provident National Bank*, 819 F.2d at 437).

27. As discussed in greater detail below, neither Northwest nor Chartway have continuous, systematic and substantial contacts with Pennsylvania.

A. **Northwest Does not Have Continuous, Systematic and Substantial Contacts with Pennsylvania.**

28. Northwest's principal place of business is outside the state of Pennsylvania. See Exhibit 1 at ¶11.

29. Northwest does not have any employees who reside in Pennsylvania. See Answers to Jurisdictional Interrogatories of Northwest at ¶16, a copy of which is attached hereto as Exhibit 5.

30. Northwest does not have any employees who conduct business on behalf of Northwest in Pennsylvania. See Exhibit 5 at ¶16.

31. Northwest does not have a place of business in Pennsylvania. See Exhibit 5 at ¶17.

32. Northwest is not licensed to sell any financial, investment or banking products in Pennsylvania. See Exhibit 5 at ¶25.

33. Northwest is not licensed to sell any insurance products in Pennsylvania. See Exhibit 5 at ¶23.

34. No evidence has been adduced of Northwest ever having been licensed by the Commonwealth of Pennsylvania in any capacity at any time material hereto.

35. No evidence has been adduced of Northwest ever owning any property in Pennsylvania at any time material hereto.

36. No evidence has been adduced of Northwest ever having filed a tax return in Pennsylvania.

37. No evidence has been adduced of Northwest ever filing administrative reports with any agency or department of the Commonwealth;

38. No evidence has been adduced of Northwest regularly purchasing products or supplies within Pennsylvania for use in its business outside of the state.

39. Northwest has not advertised in Pennsylvania or otherwise targeted Pennsylvania residents/entities. See Exhibit 5 at ¶28.

40. A mere 1.78% of Northwest's total membership presently reside in Pennsylvania. See Exhibit 5 at ¶¶ 20-21.

**B. Chartway Does not Have Continuous, Systematic and Substantial Contacts with Pennsylvania.**

41. Chartway's principal place of business is outside the state of Pennsylvania. See Exhibit 1 at ¶12.

42. Chartway does not have any employees who reside in Pennsylvania. See Answers to Jurisdictional Interrogatories of Chartway at ¶16, a copy of which is attached hereto as Exhibit 6.

43. Chartway does not have any employees who conduct business on behalf of Chartway in Pennsylvania. See Exhibit 6 at ¶16.

44. Chartway does not have a place of business in Pennsylvania. See Exhibit 6 at ¶17.

45. Chartway is not licensed to sell any financial, investment or banking products in Pennsylvania. See Exhibit 6 at ¶25.

46. Chartway is not licensed to sell any insurance products in Pennsylvania. See Exhibit 6 at ¶23.

47. No evidence has been adduced of Chartway ever having been licensed by the Commonwealth of Pennsylvania in any capacity at any time material hereto.

48. No evidence has been adduced of Chartway ever owning any property in Pennsylvania at any time material hereto.

49. No evidence has been adduced of Chartway ever having filed a tax return in Pennsylvania.

50. No evidence has been adduced of Chartway ever filing administrative reports with any agency or department of the Commonwealth;

51. No evidence has been adduced of Chartway regularly purchasing products or supplies within Pennsylvania for use in its business outside of the state.

52. With the exception of three inserts which were mailed to existing customers with their monthly statements, Chartway has not advertised in Pennsylvania or otherwise targeted Pennsylvania residents/entities. See Exhibit 6 at ¶28.

53. A mere 0.31% of Chartway's total membership presently reside in Pennsylvania. See Exhibit 6 at ¶¶ 20-21.

54. Accordingly, Northwest and Chartway are not subject to personal jurisdiction in this matter.

WHEREFORE, defendants, Northwest Federal Credit Union and Chartway Federal Credit Union, respectfully requests this Honorable Court grant the instant Motion to Dismiss and enter an Order in the form annexed hereto.

Respectfully submitted,

LITCHFIELD CAVO LLP

By: _____
WILLIAM H. CATTO, ESQ.
SEAN R. RILEY, ESQ.
*Attorneys for Defendants,*
*Northwest Federal Credit Union and Chartway Federal*
*Credit Union*

Date: July 13, 2015